UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DAMON CHARLES WILLIAMS, | CASE NO. C18-48 RSM |
| Plaintiff, | ORDER ON PENDING MOTIONS |
| v. | |
| PRK FUNDING SERVICES, INC., *et al.*, | |
| Defendants. | |

## I.    INTRODUCTION

Pro se Plaintiff[1] has filed suit against 29 named Defendants and 100 Doe Defendants.

Pending before the Court are five motions to dismiss:

1)  Motion of Defendants City of Seattle, Melvin Britt Jr., & Ronald Campbell to Dismiss
    for Lack of Subject Matter Jurisdiction and Failure to State a Claim.  Dkt. #24.  The Court
    will refer to the City of Seattle as "Defendant City," to Melvin Britt Jr. as "Defendant
    Britt," to Ronald Campbell as "Defendant Campbell," and to these Defendants
    collectively as the "City Defendants."

---

[1] Plaintiff has styled himself as a "Counterclaimant" and Defendants as "Counterdefendants"
despite Plaintiff initiating this action and no Defendant asserting claims against Plaintiff.  The
Court will utilize the appropriate terms "Plaintiff" in place of "Counterclaimant" and
"Defendant" in place of "Counterdefendant."

2) Defendant Jonathan Dreitzler's Motion to Dismiss and Joinder in City of Seattle Defendants' Motion to Dismiss. Dkt. #41. The Court will refer to Jonathan Dreitzler as "Defendant Dreitzler."

3) Defendants Windermere Services Company's and Kathyrn [sic] Hinds' Motion to Dismiss for Failure to State a Claim. Dkt. #45. The Court will refer to Windermere Services Company as "Defendant Windermere," to Kathryn Hinds as "Defendant Hinds," and to these Defendants collectively as the "Windermere Defendants."

4) King County and Thomas MacKenzie Brown's Motion to Dismiss. Dkt. #53. The Court will refer to King County as "Defendant County," to Thomas MacKenzie Brown as "Defendant Brown," and to these Defendants collectively as the "County Defendants."

5) Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss. Dkt. #74. The Court will refer to Wells Fargo Bank, N.A.[2] as "Defendant Wells Fargo."

Plaintiff has opposed these Motions.[3] Dkts. #55–60, #79–84, #89, #92–#95, and #97.[4] Also pending before the Court is Plaintiff's Motion and Notice of Motion to Strike the Notice of

---

[2] Plaintiff names "Wells Fargo, Inc." in his Complaint. Dkt. #3 at ¶ 31. Defendant Wells Fargo has appeared as "Wells Fargo Bank N.A." and indicates that "Wells Fargo, Inc." does not exist. Dkt. #74 at 1 n.1. Plaintiff takes issue with Defendant Wells Fargo's abbreviation of "National Association" to "N.A." and argues that "Wells Fargo Bank N.A." does not exist. Dkt. #92 at 11–12. The Court is not persuaded by this argument.

[3] The Court notes that there is some question as to whether Plaintiff has directly opposed City Defendants' Motion. Plaintiff's filing in opposition was electronically filed in response to City Defendants' Motion but was captioned as opposing Defendants Jonathan Dreitzler's Motion to Dismiss. Dkt. #60. "Except for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." LCR 7(b)(2). The Court has nevertheless considered Plaintiff's filings.

[4] In his briefings, Plaintiff routinely files three documents appearing to be (1) a request for the Court to grant or deny a motion, (2) a declaration without testimony but signed by Plaintiff, and (3) a memorandum containing authority and argument. Plaintiff is referred to Local Civil Rule 7(b)(1) which indicates that "argument in support of the motion shall not be made in a separate document but shall be submitted as part of the motion itself." LCR 7(b)(1).

ORDER – 2

Appearance of Michael S. Deleo & Michael T. Callan. Dkts. #76–78. Defendant Dreitzler has opposed Plaintiff's Motion. Dkt. #88. Having reviewed the record and for the reasons set forth below, the Court resolves the Motions as follows.

## II. BACKGROUND[5]

Plaintiff's claims relate to a 2009 non-judicial foreclosure and subsequent trustee sale of property in which Plaintiff may have had an ownership interest. The numerous parties sued by Plaintiff are involved, to varying degree, in the events leading up to or following that sale. The Court will attempt to present a brief overview and detail the involvement of individual Defendants with regard to their specific motions below.

Plaintiff secured a loan of one million three hundred eleven thousand dollars ($1,311,000) from Private Lenders Group, LLC ("PLG") on or about January 24, 2007. *See* Dkt. #3-1 at 17–39. The loan was intended to be used by Williams Family Holdings LLC—of which Plaintiff was a member/manager—for the purpose of financing and funding the construction of a single family residence at 515 35th Avenue South, Seattle, WA. *Id.* at 17. The loan was secured by a deed of trust upon the property. *Id.* at 37–38. Following closing of the transaction, PLG assigned the promissory note to PRK Funding Services, Inc. ("PRK"), as custodian for the noteholders in PLG Fund I, LLC. *Id.* at 32, 37–38.

Plaintiff began construction on the property but the project was not completed in the anticipated timeframe and ran into financial trouble due to the conduct of PLG and its agents. Dkt. #3 at ¶ 34; Dkt. #3-1 at 2–13. Plaintiff attempted to refinance the project. *Id.* But the trustee on the deed of trust ultimately initiated non-judicial foreclosure under Chapter 61.24, Revised Code of Washington. Dkt. #3-1 at 37–39; 84–85. The trustee sale was scheduled for September

---

[5] Relevant factual background is gleaned from the allegations of Plaintiff's Amended Complaint and the attached and incorporated exhibits. Dkt. #3, 3-1.

11, 2009.  *Id.* at 38.  Plaintiff filed for voluntary Chapter 7 bankruptcy on September 10, 2009. *Id.* at 15.  Nevertheless, the trustee held the trustee sale, as scheduled, on September 11, 2009, with PRK purchasing the property.  *Id.* at 37–39.  Plaintiff's Chapter 7 bankruptcy was later dismissed, on October 7, 2009, "for Failure to File Schedules or Statements."  *Id.* at 68.

After the trustee sale, PRK and Plaintiff each asserted ownership over the property.  *Id.* at 78, 84–85.  On January 19, 2010, Plaintiff filed a "Notice of Fraud and Intent to Litigate" against the property with the King County Auditor.  *Id.* at 89–92.  On January 25, 2010, representatives of PRK and PLG summoned the police to the property, gained entry to the structure, and towed a vehicle from the property.  *Id.* at 41–62.  Thereafter, Plaintiff obtained a temporary protection order against Jonathan Dreitzler, an agent of PLG and PRK, on January 26, 2010, from the King County District Court.  *Id.* at 120–27.  PRK initiated an unlawful detainer action against Plaintiff in King County Superior Court on January 29, 2010.  *Id.* at 111–17.  Also on January 29, 2010, Plaintiff filed a lis pendens against the property with the King County Auditor.  *Id.* at 131–33.

Ultimately, on December 8, 2010, PRK sold the property to Kirill Gavrylyuk and Chandrika Shankarnarayan and they have remained in possession ever since.  *Id.* at 94.

### III.  DISCUSSION

#### A.  The Court Has Subject Matter Jurisdiction

As an initial matter, City Defendants and County Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(1) on the basis that this Court lacks jurisdiction over Plaintiff's action.  Dkt. #24 at 5–9; Dkt. #53 at 3–4.  Plaintiff bears the burden of establishing that his case is properly within the limited jurisdiction of the federal court.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *In re Ford Motor Co./Citibank (South Dakota), N.A.*,

264 F.3d 952, 957 (9th Cir. 2001). At the pleading stage, Plaintiff must plead sufficient allegations to show a proper basis for the federal court to assert subject matter jurisdiction over the action. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

Federal question jurisdiction exists when the plaintiff's claim arises "under the Constitution, laws, or treaties of the United States." 28 U.S. C. § 1331. "[A] federal question [must be] presented on the face of the plaintiff's properly pleaded complaint." *Caterpillear, Inc. v. Williams*, 482 U.S. 386, 392 (1987). A complaint making state law claims with passing reference to a federal statute will not establish jurisdiction. *Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1040–41 (9th Cir. 2003). Rather, the state law claims must implicate a substantial federal question. *Id.* at 1042. Jurisdiction is proper where "the right to relief depends on the resolution of a substantial, disputed federal question." *Id.* (quoting *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health and Envtl. Quality of the State of Mont.*, 213 F.3d 1108, 1114 (9th Cir. 2000)) (quotation marks omitted).

City Defendants and County Defendants argue that Plaintiff's Complaint fails to assert a federal question because any Constitutional claims are frivolous and mere seasoning to state law claims. Dkt. #24 at 5–9; Dkt. #53 at 3–4. City Defendants argue further that to the extent Plaintiff's Complaint asserts violations of the automatic bankruptcy stay under 11 U.S.C. § 362, the bankruptcy courts have exclusive jurisdiction over those claims. Dkt. #24 at 6–8. But the Court is satisfied that federal question jurisdiction exists here.

First, Plaintiff asserts somewhat vague allegations related to racketeering, presumably under 18 U.S.C. § 1961 *et seq.* Dkt. #3 at ¶¶ 37–52. While the allegations do not specifically invoke the federal statute—as opposed to Washington's analog, Chapter 9A.82, Revised Code

of Washington—, the allegations utilize the phrasing of the federal statute. Plaintiff's RICO claims alone are sufficient to invoke this Court's jurisdiction and will be addressed below.

Second, Plaintiff's central grievance is that the trustee sale occurred in violation of the automatic bankruptcy stay, in violation of federal law.[6] Even so, City Defendants argue that violations of the bankruptcy stay are "within the exclusive jurisdiction of the federal bankruptcy courts." Dkt. #24 at 7 (citing *MSR Exploration, Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 916 (9th Cir. 1996)). But City Defendants' reliance on *MSR Exploration, Ltd.* is misplaced. In that case, the Ninth Circuit concluded that a state law claim of malicious prosecution, which arose out of a creditor's claim against the debtor in an earlier bankruptcy, was preempted by the bankruptcy code. *Id.* at 913. As part of the court's consideration, it noted that the bankruptcy code provided the debtor with sufficient protections from false creditor claims within the confines of the bankruptcy action. *Id.* at 915. Thus, while a claim for a violation of the bankruptcy code was not before the court, it opined that such a claim should be asserted within the underlying bankruptcy proceeding. *Id.* at 916.

*MSR Exploration, Ltd.* does not preclude the Court's jurisdiction and more recent precedent supports this Court's jurisdiction, at least at this early stage. *See In re Curtis*, 571 B.R. 441 (9th Cir. BAP 2017) (noting that that "district courts have jurisdiction over bankruptcy cases and proceedings; the bankruptcy court's jurisdiction over such matters is purely and solely derivative of the district court's jurisdiction . . . . [and] entirely dependent upon the referral by the district court"). While this Court has generally referred bankruptcy matters to the bankruptcy court, LCR 87(a), the Court is permitted to withdraw the referral and may do so by exercising

---

[6] Plaintiff appears to argue, in effect, that the initial transfer of the property from his ownership was void and without legal effect and that all subsequent activity flowing from the purported transfer is likewise void.

ORDER – 6

jurisdiction. 28 U.S.C. § 157(d); *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139 (4th Cir. 1990) (finding that district court impliedly withdrew referral to bankruptcy court where it exercised jurisdiction over a case in which the bankruptcy trustee was substituted as plaintiff). As noted in *In re Curtis*, "[l]itigants are not precluded from requesting transfer of a case from a district court to a bankruptcy court." 571 B.R. at 449; LCR 87(b). But at this early stage and due to the numerous other non-bankruptcy claims, the Court finds it appropriate to consider the case.

Having found that this Court has subject matter jurisdiction due to a substantial federal question, the Court need not consider whether diversity jurisdiction exists.[7]

## B. Relevant Legal Standards

### 1. Motion to Dismiss

All motioning Defendants have sought dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). In making a Rule 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citations omitted).

---

[7] Plaintiff has asserted diversity jurisdiction as the basis for proper jurisdiction within this Court. Dkt. #1-1. However, the Court notes that Plaintiff does not appear to have adequately pled citizenship of all parties in order to establish diversity jurisdiction. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (diversity jurisdiction requires complete diversity and plaintiff must be a citizen of a different state than each defendant); LCR 8(a) (plaintiff asserting diversity jurisdiction must identify citizenship of all parties and all members of LLCs).

A complaint must contain sufficient facts "to state a claim for relief that is plausible on its face." *Id.* at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556, 557). Absent facial plausibility, a plaintiff's claims must be dismissed.

## 2. Pro Se Considerations

The Court must also remain mindful that Plaintiff is proceeding pro se. "The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982)). Pro se plaintiffs are ultimately held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, "courts should not have to serve as advocates for pro se litigants." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987). Indeed, "[h]e who proceeds pro se with full knowledge and understanding of the risks does so with no greater rights than a litigant represented by a lawyer, and the trial court is under no obligation to . . . assist and guide the pro se layman[.]" *Jacobsen v. Filler*, 790 F.2d 1362, 1365, n. 5 (9th Cir. 1986) (quoting *United States v. Pinkey*, 548 F.2d 305 (10th Cir. 1977)).

### 3. Consideration of Materials Outside Pleadings and Judicial Notice

Lastly, City Defendants, Defendant Dreitzler,[8] County Defendants,[9] and Defendant Wells Fargo have all requested that the Court consider facts or documents outside of the pleadings. Dkts. #25; #41 at 6–7; #42; #53 at 6 n.1; #75. In considering a Rule 12(b)(6) motion, the Court generally considers "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citations omitted). Here, the Court has considered the documents Plaintiff attached to his Complaint and has taken judicial notice of, and considered, the documents attached to the Declaration of Josh Johnson (Dkt. #25) and the documents attached to Defendant Wells Fargo's request (Dkt. #75). Judicial notice is appropriate because Plaintiff has not objected, has not contested the authenticity of the documents, and the accuracy of the sources cannot be reasonably questioned. Fed R. Evid. 201.

### C. Plaintiff Fails to Adequately Plead RICO Claims

As an initial matter, Plaintiff has made vague allegations related to racketeering, presumably under 18 U.S.C. §§ 1961 *et seq*.[10] Dkt. #3 at ¶¶ 37–52. While Plaintiff's Complaint

---

[8] It is not clear to the Court whether Defendant Dreitzler is requesting that the Court take judicial notice of any documents other than those Plaintiff attaches to his Complaint. The Court therefore denies Defendant Dreitzler's request as moot.

[9] County Defendants only request that the Court take notice of the fact that Defendant Brown is Deputy Prosecuting Attorney for King County. Dkt. #53 at 6 n.1. Plaintiff has alleged as much, Dkt. #3 at ¶ 4, and does not contest the point. The Court therefore denies County Defendants' request as moot.

[10] Plaintiff does not appear to cite to federal Racketeer Influenced and Corrupt Organizations Act ("RICO") statutes. But, Plaintiff utilizes language that tracks the federal RICO statute and cites to federal conspiracy statutes in his "Law of the Case" exhibit, attached to the Complaint. Dkt. #3-1 at 104–05 (quoting 18 U.S.C. § 241, 242). Because the Court construes pro se pleadings liberally and affords the benefit of the doubt, the Court will consider whether Plaintiff has adequately stated a claim under RICO. *See Bretz v. Kelman*, 773 F.2d 1026, 1027 (9th Cir. 1985)

is far from clear, Plaintiff appears to allege that all Defendants[11] engaged in racketeering and the Court finds it appropriate to address these claims collectively. To successfully state a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'" *Grimmet v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996) (citing 18 U.S.C. §§ 1964(c), 1962(c)). Most relevant to Plaintiff's allegations, an "enterprise" is an entity or "group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). Pleading an enterprise requires more than merely pleading a pattern of racketeering activity because "[t]he 'enterprise' is not the 'pattern of racketeering activity', it is an entity separate and apart from the pattern of activity in which it engages." *Id.*

Plaintiff fails to adequately plead a RICO claim as to any Defendant. First, Plaintiff does not adequately plead an enterprise. Plaintiff specifically alleges that PLG, PRK, and Defendant Pyatt Broadmark Management, LLC belong to a "syndicate." Dkt. #3 at ¶ 43. But beyond that conclusory allegation, Plaintiff does not allege any facts demonstrating a plausible enterprise separate from the pattern of alleged racketeering. With regard to all Defendants, Plaintiff relies only on general allegations that track the elements of the cause of action. *See e.g.* Dkt. #3 at ¶ 41 ("[Plaintiff] has perfected a claim by showing the existence of an enterprise, showing a pattern of racketeering activity: fraud, shown nexus between the Trespassers and the pattern of frauds,

---

(considering whether pro se plaintiff stated a cause of action under 42 U.S.C. § 1985 even though not referring to that statute).

[11] Plaintiff may actually only be asserting his racketeering claims against PLG, PRK, and Defendant Pyatt Broadmark Management, LLC, as he specifically alleges that they engage in "illicit business benefiting the syndicate" to which they "belong directly or indirectly." But again, Plaintiff's Complaint is not clear and the Court will construe his claims broadly. *Bretz*, 773 F.2d at 1027.

and shown resulting injury to property."). Plaintiff's non-specific allegations are insufficient to plead the existence of an enterprise or a pattern of racketeering through fraud. *See Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038, 1046 (E.D. Cal. 2010) (finding allegations "that every defendant was aware that the notice of default [on a deed of trust] was invalid and that every defendant either participated in or rendered substantial assistance in the issuance of the invalid notice . . . . not remotely sufficient to support" a civil RICO claim).

Additionally, Plaintiff's current RICO allegations are precluded by the statute of limitations. "The statute of limitations for civil RICO actions is four years" and runs from the time "a plaintiff knows or should know of the injury that underlies his cause of action." *Pincay v. Andrews*, 238 F.3d 1106, 1108–09 (9th Cir. 2001) (citations omitted).[12] Even if new predicate acts occurred within the four years prior to Plaintiff filing this action, Plaintiff cannot use a "new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) (citations omitted). While Plaintiff points to several events that have taken place within the four years prior to his suit, he does not indicate which events may qualify as "racketeering activity" for the purposes of RICO and does not identify an enterprise or plead that the actions were taken by the

---

[12] Plaintiff argues that the statute of limitations applicable to RICO claims is ten years. Dkt. #84 at 5. Plaintiff supports his argument by citing *Rotella v. Wood*. 528 U.S. 549 (2000). But *Rotella* doesn't support Plaintiff's claims and explicitly explains that a "4-year limitations period for civil RICO claims" applies. *Id.* at 552 (citing *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 156 (1987)). Plaintiff relies on the portion of *Rotella* quoting the statutory definition of "pattern," with the court explaining that the law requires "at least two acts of racketeering activity . . ., the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." *Rotella*, 528 U.S. at 552 (quoting 18 U.S.C. § 1961(5)) (quotation marks omitted). While the pattern may consist of activity over a ten year period, *Rotella* makes clear that the 4-year statute of limitations begins running from the date of injury, not from the date the injured party discovers the pattern of racketeering activity. *Id.* at 554.

enterprise. Plaintiff has therefore failed to state a claim under RICO[13] and any such claim will be dismissed without prejudice as to the moving Defendants.

**D. City Defendants' Motion to Dismiss**

**1. City Defendants' Involvement**

City Defendants became involved, following the trustee sale, on January 25, 2010. Dkt. #3-1 at 41–62. On that day, Defendant Campbell, a police officer, responded to the property to investigate a trespassing complaint. *Id.* at 47. Defendant Campbell was met by representatives of PLG who told Defendant Campbell that the property had been properly sold at the trustee sale and belonged to PLG. *Id.* PLG representatives changed the locks and Defendant Campbell swept the house to see if anyone was currently in the home. *Id.* Later that day, Defendant Campbell was contacted by Plaintiff and learned that Plaintiff had filed for bankruptcy prior to the trustee sale and had a right to occupy the property. *Id.* at 50. On February 1, 2010, Plaintiff left Defendant Campbell a message in which Plaintiff indicated that he had the legal rights to the property and that his attorney had requested that the Seattle Police Department investigate PLG's entry into the house on January 25, 2010. *Id.* Defendant Britt—a police detective—advised Defendant Campbell that he would investigate the matter further. *Id.* There is no indication in the record that Defendant Britt did so. Plaintiff also alleges that Defendant Britt withheld Plaintiff's laptop and subsequently conspired to displace the hard drive from the laptop. Dkt. #3 at ¶¶133, 135. Plaintiff does not elaborate on how Defendant Britt came to possess his laptop or indicate that the two ever had any interaction.

---

[13] Because Plaintiff's substantive RICO allegations fail, he also cannot state a RICO conspiracy claim. *Howard v. American Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) ("Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO.").

### 2. Plaintiff's Claims against Defendant Campbell Fail

Plaintiff has styled his Complaint as an "Action for Trespass, and Trespass the Case" and captions his specific allegations against Defendant Campbell as "Fourth Count of Action for Trespass against City Ronald J. Campbell." *Id.* at ¶¶ 118–119. Plaintiff captions his claims against individual Defendants similarly and repeats his use of "trespass" throughout the Complaint, leading the Court to conclude that Plaintiff intends to allege trespass and negligence[14] claims against all of the individual Defendants, including Defendant Campbell. *Id.* at ¶¶ 119–129. Plaintiff's primary complaints against Defendant Campbell appear to arise from Defendant Campbell's January 25, 2010 entry into the property and residence. *Id.* at ¶ 121 ("Trespasser CAMPBELL did knowingly conspire in the execution of the burglary under color of law while armed with a weapon."); *Id.* at ¶ 122 ("Trespasser CAMPBELL did receive notice of the controversy prior to entering the private property under color of law.").

City Defendants have properly sought dismissal on the basis that the longest statute of limitations applicable to Defendant Campbell's actions, all occurring in January of 2010, is three years. Dkt. #24 at 10 (citing RCW 4.16.030; RCW 4.16.080). City Defendants establish that this is true whether the claims are constitutional violations under 42 U.S.C. § 1983, trespasses upon real property, or negligent injury to persons or property. *Id.* Plaintiff argues that the "Continuing Violation Doctrine" applies to his claim because the unlawful conduct continues and Plaintiff only recently discovered the nexus between his harms and Defendant Campbell. Dkt. #60 at 10. But Plaintiff provides no authority in support of his position, does not indicate

---

[14] The Court understands "Trespass on the Case" to be a common law tort theory akin to negligence. *See* Black's Law Dictionary (10th ed. 2014) (defining "trespass on the case" as "a lawsuit to recover damages that are not the immediate result of a wrongful act but rather a later consequence" and as a "precursor to a variety of modern-day tort claims, including negligence, nuisance, and business torts").

why he could not have discovered the harm earlier, and does not identify any actions taken by Defendant Campbell since January, 2010, to support his continuing violation doctrine theory. Plaintiff has failed to adequately state any claim against Defendant Campbell that is not barred by an applicable statute of limitations and these claims are accordingly dismissed with prejudice.

### 3. Plaintiff's Claims against Defendant Britt Fail

In addition to the general trespass and negligence claims, Plaintiff alleges that Defendant Britt failed to investigate Plaintiff's January, 2010 complaints about other Defendants. Dkt. #3 at ¶¶ 132; 135. Additionally, Plaintiff asserts that Defendant Britt held Plaintiff's laptop to obstruct the administration of justice and ultimately displaced the laptop's hard drive. *Id.* at ¶¶ 133, 136.

Plaintiff's conclusory claims that Defendant Britt withheld the laptop and damaged the laptop are not sufficient under Rules 8(a) and 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a); *Iqbal*, 556 U.S. at 678 (requiring a complaint to establish "more than a sheer possibility that a defendant has acted unlawfully"). Plaintiff has not alleged sufficient facts to establish a plausible claim against Defendant Britt.[15] Further, City Defendants have established that Defendant Britt has not been employed by Defendant City since March, 2014, and therefore argue that the relevant three year statutes of limitation must have run on any claims related to Defendant Britt. Dkt. #24 at 10–11. Plaintiff does not contest this argument and the Court will accept the concession. Plaintiff's claims against Defendant Britt

---

[15] Plaintiff does not allege how Defendant Britt ever came to possess his laptop and does not allege facts making it more than possible that Detective Britt—as opposed to any other City of Seattle employee—was the individual that damaged the laptop. Curiously, Plaintiff does not assert this claim against Defendant City, which appears to have had possession of the laptop. Dkt. #3-1 at 87.

fail to state a claim not barred by an applicable statutes of limitation, and are dismissed with prejudice.

### 4. Plaintiff's Claims against Defendant City Fail

In addition to the general trespass and negligence claims, Plaintiff alleges, in effect, that Defendant City should have known of the actions of Defendant Campbell and Defendant Britt and failed to prevent the actions and "did turn a blind eye to the bankruptcy stay violations, the burglary and crimes committed" by Defendants Campbell and Britt. Dkt. #3 at ¶¶ 303, 304. But Plaintiff's claims against Defendant City are only based on actions taken by Defendants Campbell and Britt. Because the Court has found that liability for those actions is precluded by applicable statutes of limitation, and Plaintiff has not established otherwise, the claims against Defendant City fail for the same reasons and are dismissed with prejudice.

### E. Defendant Dreitzler's Motion

### 1. Defendant Dreitzler's Involvement

Defendant Dreitzler was an employee of PLG and appears to have had extensive contact with Plaintiff on PLG's behalf. Dkt. #3-1 at 2–13. Throughout the remodel project, Defendant Dreitzler coordinated with Plaintiff on disbursement of loan funds. *Id.* When PLG failed to disburse necessary funds, Defendant Dreitzler represented to Plaintiff that he was attempting to work with Plaintiff to keep the project proceeding. *Id.* When PRK began foreclosure proceedings, Defendant Dreitzler instructed Plaintiff that it was a tactical decision to reduce contractor claims and that Plaintiff could request that PLG stop the process. *Id.* After the trustee sale, Defendant Dreitzler was present at the property on January 26, 2010, and called the police on Plaintiff due to his presence at the property. Dkt. #3-1 at 56.

### 2. Plaintiff's Motion to Strike

Before considering Plaintiff's claims against Defendant Dreitzler, the Court finds it appropriate to consider Plaintiff's Motion and Notice of Motion to Strike the Notice of Appearance of Michael S. Deleo & Michael T. Callan. Dkts. #76, #77, and #78. Plaintiff contends that the notices of appearance filed by Messrs. Deleo and Callan, counsel for Defendant Dreitzler, (Dkts. #12, #13, and #72) are defective due to the use of a middle initial instead of a middle name, thereby denying Plaintiff due process. Dkt. #78. Presumably Plaintiff's Motion is an attempt to prevent the Court from considering Defendant Dreitzler's Motion.

Plaintiff argues that the appearances are improper primarily on the basis of a federal regulation related to Real ID Driver's licenses, 6 C.F.R. § 37.3, and various statutes and rules related to names, disqualification from "The Foundation of the Federal Bar Association," misprision of felony, and treason. Dkt. #78 at 3–12. Without explaining why, Plaintiff asserts that counsel for Defendant Dreitzler "have denied [Plaintiff] the ability to properly notice the other relevant parties." Dkt. #78 at 14. Plaintiff requests that counsel be ordered to "produce the required/requested information," without specifying what information is required, and that the Court strike filings by counsel for Defendant Dreitzler. Dkt. #78 at 14–15. Defendant Dreitzler responds that the rules cited by Plaintiff are not applicable here and that Defendant Dreitzler's counsel has appeared in compliance with this Court's rules. Dkt. #88. Upon review, the Court is satisfied that the authorities cited by Plaintiff are not applicable and that Defendant Dreitzler's counsel has properly appeared before this Court and therefore denies Plaintiff's Motion to Strike.

### 3. Plaintiff's Claims against Defendant Dreitzler Fail

Turning to Defendant Dreitzler's Motion, he has joined City Defendants' Motion seeking dismissal on the basis of applicable statutes of limitation and additionally argues that Plaintiff's

lawsuit is barred by the doctrine of waiver for failure to challenge the 2009 trustee sale. Dkt. #41 at 4. The Court agrees that Plaintiff's possible claims against Defendant Dreitzler are barred by the applicable statutes of limitations and accordingly does not address Defendant Dreitzler's waiver argument.

In addition to the general trespass and negligence claims, Plaintiff appears to assert claims of fraud, breach of fiduciary duty, and tortious interference with a contract against Defendant Dreitzler. Dkt. #3 at ¶¶ 68, 69, 72. But these additional claims are likewise barred by the applicable statutes of limitation. *See* RCW 4.16.080(4) (fraud, 3 years); *Hudson v. Condon*, 101 Wash. App. 866, 6 P.3d 615 (2000) (breach of fiduciary duty sounding in tort and fraud, 3 years); RCW 4.16.080(2); and *Woods View II, LLC v. Kitsap County*, 188 Wash. App. 1, 20, 352 P.3d 807, 816 (2015) (negligence and tortious interference, 3 years). Plaintiff has pointed to no actions taken by Defendant Dreitzler after January 26, 2010, and has not pointed to any statute of limitations under which his claims are timely. Plaintiff's individual claims against Defendant Dreitzler are dismissed with prejudice.

**F. Windermere Defendants' Motion**

**1. Windermere Defendants' Involvement**

Defendant Hinds, working for Defendant Windermere, coordinated with Plaintiff to list and attempt to sell the property in 2009 after the project ran into financial trouble. Dkt. #3-1 at 129. Following the trustee sale at which PRK acquired the property, and while Plaintiff's bankruptcy was pending, Windermere Defendants caused the property to be listed for sale on September 26, 2009. Dkt. #3 at ¶ 145; Dkt. #3-1 at 135.

### 2. Plaintiff's State Law Claims against Windermere Defendants Fail

In addition to general claims of trespass and negligence, Plaintiff alleges that Windermere Defendants breached a fiduciary duty owed to Plaintiff, presumably by listing the property for sale on September 26, 2009. Dkt. #3 at ¶¶ 145, 147. Windermere Defendants have moved to dismiss under Rule 12(b)(6)[16] on the basis that Plaintiff's claims against them are time barred. Dkt. #45 at 4. For the same reasons discussed above, Windermere Defendants are correct as to the state law claims, Plaintiff's arguments do not alter the Courts prior reasoning, and these claims are dismissed with prejudice.[17]

### 3. Windermere Defendants Do Not Address Plaintiff's Bankruptcy Claim

However, Windermere Defendants have failed to adequately address Plaintiff's bankruptcy claims. Plaintiff has clearly alleged that Defendant Hinds, as an agent for Defendant Windermere, violated the bankruptcy stay issued in his bankruptcy case and argues that "there is no evidence of any statute of limitations legislated in regard to returning property unlawfully obtained in violation of an Automatic Stay." Dkt. #3 at ¶ 145; Dkt. #84 at 5. Windermere Defendants have not addressed the issue.

---

[16] Because Windermere Defendants have answered (Dkt. #39) their motion technically seeks judgment on the pleadings pursuant to Rule 12(c). But, because the standards are functionally the same, the distinction is not material. *Snoqualmie Indian Tribe v. City of Snoqualmie*, 186 F. Supp. 3d 1155, 1161–62 (W.D. Wash. 2016) (citing *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) and *Seabright Ins. Co. v. Matson Terminals, Inc.*, 828 F.Supp.2d 1177, 1188 (D. Haw. 2011)).

[17] Plaintiff again raises the argument that attorneys are appearing improperly due to the use of a middle initial. Dkt. #84 at 6–7. Because the Court has already rejected that argument, *supra*, section III.E.2, the Court will not address the argument again.

Plaintiff has also filed a Surreply Addressing the Request to Strike Windermere Defendants' reply. Dkt. #89. Plaintiff's Surreply was not filed in compliance with Local Rule 7(g), seeks to strike the entire reply, and is also based on Plaintiff's failed argument that attorneys must utilize their full middle name. Dkt. #89. The Court need not address Plaintiff's Surreply and otherwise denies the request.

"The filing of a bankruptcy petition creates a bankruptcy estate, which is protected by an automatic stay of actions by all entities to collect or recover on claims. 11 U.S.C. § 362(a). 'The automatic stay is self-executing, effective upon the filing of the bankruptcy petition.'" *Burton v. Infinity Capital Mgmt.*, 862 F.3d 740, 746 (9th Cir. 2017) (quoting *Gruntz v. Cnty. of Los Angeles*, 202 F.3d 1074, 1081 (9th Cir. 2000)). The stay is broad and applies to "almost any type of formal or informal action against the debtor or property of the estate." *Burton*, 862 F.3d at 746–47 (quoting *Stringer v. Huet*, 847 F.2d 549, 552 n.4 (9th Cir. 1988)). The stay remains in force until specific property is no longer property of the estate or until the case is closed or dismissed or a discharge is granted or denied. 11 U.S.C. § 362(c)(1), (2).

Actions taken in violation of the stay are void, *Schwartz v. United* States, 954 F.2d 569, 571 (9th Cir. 1992), and give rise to potential monetary damages. 11 U.S.C. § 362(k) (party injured by willful violation of stay shall recover actual damages). Later dismissal of the bankruptcy proceeding does not absolve actions taken in violation of the stay. *See 40235 Washington Street Corp. v. Lusardi*, 329 F.3d 1076, 1080 n.2 (9th Cir. 2003) (considering actions taken in violation of automatic stay even though bankruptcy proceeding in which stay arose was later dismissed as having been filed in bad faith); *Aheong v. Mellon Mortgage Co.*, 276 B.R. 233, 244 (9th Cir. BAP 2002) ("[W]e have held that after dismissal of a bankruptcy case the bankruptcy court retains jurisdiction over an action for damages for willful violation of the automatic stay."). Further still, actions under § 362(k) are not clearly subject to any limitations period. *In re Stanwyck*, 450 B.R. 181 (Bankr. E.D. Cal. 2011) ("Congress did not establish any limitations period for damage claims under § 362(k)."); *Sundquist v. Bank of America, N.A.*, 566 B.R. 563 (Bankr. E.D. Cal. 2017), vacated in part, 580 B.R. 536 (Bankr. E.D. Cal. 2018) ("liability for a stay violation continues at least until full restitution is actually made or, if after

the expiration of the stay, the court orders full restitution") (citing *Snowden v. Check Into Cash of Wash., Inc.*, 769 F.3d 651, 659, 662 (9th Cir. 2014)).

Plaintiff's claims related to violations of the bankruptcy stay may not ultimately be actionable or succeed on the merits, but the Court will not dismiss them without the benefit of adequate briefing from the parties. Windermere Defendants' Motion is therefore denied as to Plaintiff's bankruptcy claims.

## G. County Defendants' Motion

### 1. County Defendants' Involvement

Defendant County's involvement in this case appears to stem from the fact that the property is located within its jurisdictional boundaries. As a result, Defendant County recorded records related to the property—including the trustee's deed following the trustee sale—and collected taxes related to the property. Dkt. #3-1 at 35–39, 89–92, 94, and 131–33.

Defendant Brown's involvement, however, is not clear to the Court. Plaintiff only alleges that Defendant Brown is a "King County Prosecutors [sic] Office, Deputy Prosecuting Attorney" and "under color of law deprived [Plaintiff] of the right to an administrative review with an appealable determination." Dkt. #3 at ¶¶ 4, 250. Plaintiff also points to a December 6, 2017 complaint form he presumably submitted to Defendant County, but does not explain Defendant Brown's involvement with that complaint.

### 2. Plaintiff's Claims against Defendant Brown Fail

In addition to general claims of trespass and negligence, Plaintiff alleges, as noted above, that Defendant Brown denied him due process by denying him review of an unspecified action. Dkt. #3 at ¶¶ 250–252. But the Court is not able to discern the basis for Plaintiff's claims against Defendant Brown and the allegations fail to adequately state a claim. Plaintiff's allegations do

not identify any contact between Plaintiff and Defendant Brown and do not sufficiently plead the action from which Plaintiff wishes to appeal, when it occurred, or the circumstances in which the administrative review was denied. Plaintiff's conclusory allegations are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (complaint must lead to reasonable inference that "the defendant is liable for the misconduct alleged"); Fed. R. Civ. Pro. 8(a).

Plaintiff's claims against Defendant Brown also fail because it appears that Defendant Brown has not been properly served. County Defendants have sought dismissal on the basis of insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). Dkt. #53 at 9–10. Plaintiff appears to concede that service was effected on an unidentified clerk in the King County Prosecutor's Office. Dkt. #81 at ¶¶ 52–54; Dkt. #91. Service on a party other than the defendant at the defendant's place of business is not sufficient. Fed. R. Civ. P. 4(e); RCW 4.28.080(16). Plaintiff's claims with regard to Defendant Brown are therefore dismissed without prejudice.

### 3. Plaintiff's Claims against Defendant County Fail

In addition to general claims of trespass and negligence, Plaintiff alleges that Defendant County took his property without due process, unlawfully collected a tax, and became unjustly enriched. Dkt. #3 at ¶¶ 264–266. Additionally, Plaintiff alleges that Defendant County's recording of the 2009 trustee's deed violated the bankruptcy stay. *Id.* at ¶¶ 262–263.

Defendant County argues that any actions taken by it in 2009 cannot form the basis for Plaintiff's claims. Dkt. #53 at 4–5. With regard to non-bankruptcy claims, Defendant County is clearly correct. As discussed above, the applicable statutes of limitation bar Plaintiff's state law claims for actions that took place prior to January 11, 2015, and Plaintiff has provided no authority to the contrary. These claims are therefore dismissed with prejudice.

Defendant County has also failed to fully address Plaintiff's bankruptcy claim, but even on the scant record, Plaintiff's claim is clearly precluded. Defendant County does establish that all actions it took with regard to the 2009 trustee sale were required under Washington law. Dkt. #53 at 5 (citing RCW 65.04.030, RCW 65.04.110, and RCW 65.08.150 to show that Defendant County was required to record the documents that form the basis of Plaintiff's claims against Defendant County). Acts required by statute and involving no discretion do not violate the bankruptcy stay or create liability. "The Ninth Circuit has adopted the ministerial acts exception, which provides that the automatic stay does not prohibit '[m]inisterial acts or automatic occurrences that entail no deliberation, discretion, or judicial involvement' on the part of an actor." *In re Richter*, 525 B.R. 735, 753–54 (Bankr. C.D. Cal. 2015) (quoting *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit),* 217 F.3d 1072, 1080 (9th Cir. 2000)). Unlike Plaintiff's claims against Windermere Defendants, Plaintiff's claims against Defendant County for violation of the bankruptcy stay are clearly precluded, even on the limited record before the Court, and are dismissed with prejudice.

## H. Defendant Wells Fargo's Motion

### 1. Defendant Wells Fargo's Involvement

Defendant Wells Fargo's involvement in this matter is not immediately clear from Plaintiff's Complaint. However, the parties appear to agree that Defendant Wells Fargo's involvement stems from being the beneficiary of a deed of trust recorded against the property on December 14, 2010, when it was purchased by the current occupants—Defendants Kirill Gavrylyuk and Chandrika Shankarnarayan. Dkt. #94 at ¶¶ 4, 10, 13; Dkt. #96. Plaintiff does not allege that Defendant Wells Fargo has taken any relevant action since December 14, 2010.

### 2. Plaintiff's Claims against Defendant Wells Fargo Fail

In addition to general claims of trespass and negligence, Plaintiff alleges that Defendant Wells Fargo conspired to slander title. Dkt. #3 at ¶ 214. Defendant Wells Fargo argues Plaintiff's claims are barred by the statute of limitations and insufficiently plead under Federal Rule of Civil Procedure 8(a). Dkt. #74 at 4–8. The Court agrees that Plaintiff's allegations are not adequate under Rule 8 which requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2). Rule 8 plays an important role as it ensures that the parties can "determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

Regardless, Plaintiff and Defendant Wells Fargo appear to agree that Plaintiff's claims arise from a December 14, 2010 deed of trust recorded against the property. Defendant Wells Fargo establishes that any slander of title claim is time barred as the applicable statute of limitations is three years. Dkt. #74 at 5 (citing RCW 4.16.080(1) and *Cuddeback v. Land Home Fin. Servs.*, No. C10-1347RSM, 2011 WL 903881, at 4* (W.D. Wash. Mar. 14, 2011) (holding slander of title sounded in tort and applying three year statute of limitations)). Accordingly, Plaintiff's trespass, negligence, and slander of title claims arising out of the December 14, 2010 deed of trust are time barred and dismissed with prejudice.

Plaintiff alleges and argues broadly that Defendant Wells Fargo's borrowers—Defendants Kirill Gavrylyuk and Chandrika Shankarnarayan—are still in possession of the property and that this establishes a continuing conspiracy as to all Defendants and that further discovery is necessary to sort out his claims. Dkt. #94 at 10–12. But Plaintiff must satisfy the pleading standards of the Federal Rules of Civil Procedure before being granted access to

discovery. *Iqbal*, 556 U.S. at 678–79 (noting that relaxed pleading standards do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) (citing *Iqbal* to conclude pleading standards must be satisfied "*before* the discovery stage, not after it").

## I.  Leave to Amend

Ordinarily, leave to amend a complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile.") (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)).  Many of Plaintiff's claims, as specified above, are barred by applicable statutes of limitation and therefore leave to amend would be futile.  However, with regard to claims dismissed without prejudice, the Court will grant leave to amend as specified below.

Should Plaintiff take the opportunity to amend claims, the Court finds it useful to remind Plaintiff that Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. Pro. 8(a)(2).  Plaintiff must also allege "more than labels and conclusions, [as] a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Plaintiff's Complaint is conclusory and confusing. Instructive here is the *McHenry* court's apt explanation:

> Prolix, confusing complaints such as the ones plaintiffs filed in this case impose unfair burdens on litigants and judges.  As a practical matter, the judge and opposing counsel, in order to perform their responsibilities, cannot use a complaint such as the one plaintiffs filed, and must prepare outlines to determine who is being sued for what.  Defendants are then put at risk that their outline differs from the judge's, that plaintiffs will surprise them with something new at

trial which they reasonably did not understand to be in the case at all, and that res judicata effects of settlement or judgment will be different from what they reasonably expected. "[T]he rights of the defendants to be free from costly and harassing litigation must be considered."

*Id.* at 1179–80 (quoting *Von Poppenheim v. Portland Boxing and Wrestling Commission*, 442 F.2d 1047, 1054 (9th Cir. 1971)).

Plaintiff is further reminded that the Court sealed his Complaint on May 25, 2018, because of personal identifiers contained in the Complaint in violation of Federal Rule of Civil Procedure 5.2 and Local Civil Rule 5.2. Any amended complaint must not contain personal identifiers and comply with both rules. Further, should Plaintiff decide not to file an amended complaint, he still must refile his Complaint without including personal identifiers and in compliance with the rules.

## IV.    CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS:

1.  The Motion of Defendants City of Seattle, Melvin Britt Jr., & Ronald Campbell to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (Dkt. #24) is GRANTED. Plaintiff's claims against the City of Seattle, Melvin Britt Jr., and Ronald Campbell are DISMISSED as specified in this Order.

2.  Defendant Jonathan Dreitzler's Motion to Dismiss and Joinder in City of Seattle Defendants' Motion to Dismiss (Dkt. #41) is GRANTED. Plaintiff's claims against the Jonathan Dreitzler are DISMISSED as specified in this Order.

3.  Defendants Windermere Services Company's and Kathyrn [sic] Hinds' Motion to Dismiss for Failure to State a Claim (Dkt. #45) is GRANTED in part and DENIED in part. Plaintiff's claim against Windermere Services Company and Kathryn Hinds

for violation of the bankruptcy stay are NOT DISMISSED and all other claims against Windermere Services Company and Katheryn Hinds are DISMISSED as specified in this Order.

4. King County and Thomas MacKenzie Brown's Motion to Dismiss (Dkt. #53) is GRANTED. Plaintiff's claims against King County and Thomas MacKenzie Brown are DISMISSED as specified in this Order.

5. Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss (Dkt. #74) is GRANTED. Plaintiff's claims against Wells Fargo, N.A. are DISMISSED as specified in this Order.

6. Plaintiff's Motion and Notice of Motion to Strike the Notice of Appearance of Michael S. Deleo & Michael T. Callan (Dkt. #76) is DENIED.

7. Plaintiff may file an amended complaint **no later than thirty (30) days from the date of this Order**. Should Plaintiff choose to file an amended complaint, Plaintiff shall omit all claims that have been dismissed with prejudice and must not contain personal identifiers as noted in this Order. Should Plaintiff choose not to file an amended complaint, the moving parties shall be terminated as specified above.

8. Nothing in this Order precludes Defendants from moving to dismiss any amended complaint should they believe such action is warranted and legally supported.

9. This matter remains OPEN as to all other Defendants.

DATED this 6th day of July 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 26